**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laticia Contreras Ruiz,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-01252-PHX-DJH<br><br>**ORDER** |

    Plaintiff Laticia Contreras Ruiz ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq*. (the "Act"). (Doc. 1). Plaintiff filed an Opening Brief (Doc. 12), the Commissioner filed a Response (Doc. 13), and Plaintiff filed a Reply. (Doc. 14). Upon review of the briefs and the Administrative Record (Doc. 11, "AR"), the Court affirms the Administrative Law Judge's July 21, 2021, decision (AR at 14–27).

**I.   Background**

    On February 26, 2019, Plaintiff filed applications for SSDI and SSI benefits under Titles II and XVI of the Act. (*Id*. at 14). Both applications alleged an onset of disability date of June 14, 2018. (*Id*.) Plaintiff was forty-four years old at the time of her alleged onset date and has an eighth grade education. (Doc. 12 at 2; AR. at 39). Her past relevant work was employment as a sander for a furniture manufacturer. (AR at 334). Plaintiff

claimed she cannot work due to her history of autoimmune disease, Hepatitis B, borderline diabetes, carpal tunnel in hands and arms, depression, and arthritis. (*Id*. at 333).

Plaintiff's claims were initially denied on July 8, 2019, and upon reconsideration on November 19, 2019. (*Id*. at 14). After holding a hearing on February 10, 2021, the Administrative Law Judge ("ALJ") again issued an unfavorable decision on July 21, 2021 (*id*. at 14–27) (the "July Decision").

## II. The ALJ's Five Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

(g).  If the ALJ determines no such work is available, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ's findings in the July Decision are as follows:

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2023, and that she has not engaged in substantial gainful activity since June 14, 2018, Plaintiff's alleged disability onset date. (AR. at 16). At step two, she found that Plaintiff has the following severe impairments: immune deficiency disorders, excluding HIV infection; chronic liver disease; carpal tunnel syndrome; dysfunction, major joints; obesity; depressive, bipolar and related disorders. (*Id*. at 17 citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).

At step three, the ALJ applied the 20 C.F.R. § 404.1520a(b) psychiatric review technique ("PRT") to evaluate Plaintiff's mental impairments. (*Id*. at 17–18). The ALJ noted Plaintiff has moderate limitations understanding, remembering, or applying information; a mild limitation interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing oneself. (*Id*.) The ALJ ultimately determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id*.)

At step four, the ALJ found Plaintiff has the RFC to perform light work[3] with several exceptions:

> [Plaintiff] could frequently climb ramps and stairs, stoop, kneel, crouch and crawl.  She could never climb ladders, ropes or scaffolds.  The claimant can occasionally engage in right hand handling and fingering.  She could frequently use the left hand for handling and fingering.  She should not be

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

>exposed to dangerous machinery and unprotected heights. She would be limited to simple routine repetitive tasks not performed in a fast paced production environment and would be limited to employment involving only simple work related decisions.

(*Id*. at 18). She considered Plaintiff's mental allegations and complaints in assessing the RFC. (*Id*. at 21). She determined that objective medical records, including psychiatric and mental status exams, do not support greater restrictions and suggest her symptoms are relatively controlled. (*Id*.) The ALJ concluded Plaintiff is unable to perform past relevant work given her RFC assessment. (*Id*. at 25–26).

At step five, the ALJ posed to a vocational expert a hypothetical person with Plaintiff's RFC. (*Id*. at 63). The vocational expert testified the individual would be able to perform two representative occupations defined by the Department of Labor's Dictionary of Occupational Titles ("DOT"): an usher and a school bus monitor. (*Id*. at 64, 27 citing DOT § 344.677-014, 1991 WL 672865 (4th ed. 1991) (usher); *id*. § 372.667-042, 1991 WL 673102 (school bus monitor)). Both positions recommended by the vocational expert entailed a General Educational Development ("GED") Reasoning Level of Two.[4] *See id*. Based on this testimony, the ALJ found Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 58). Plaintiff was therefore deemed not disabled under the Act. (*Id.* at 58–59).

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's July Decision, thus adopting the decision as the agency's final decision. (*Id.* at 2–5). This appeal followed. On July 26, 2022, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

/ / /

---

[4] The DOT describes the requirements for each listed occupation, including the necessary General Educational Development levels that encompass "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702. Among the GED levels is the "Reasoning Development" required to perform a job, which ranges from Level One (the least reasoning ability) to Level Six (the most). *See id*.

### III. Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, resolving ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v.*

*Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.    Discussion**

Plaintiff takes issue with the mental restrictions the ALJ included in the RFC, which limit Plaintiff to "simple routine repetitive tasks not performed in a fast paced production environment" and "to employment involving only simple work related decisions." (AR at 18). The SSA regulations define a claimant's RFC as the "*maximum degree* to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)) (emphasis added); *see also* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p (The RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most"). Plaintiff argues the RFC restrictions do not properly reflect her work-task limitations and social limitations as assessed in the medical record and the ALJ's PRT findings. (Doc. 12 at 4–9). The Court will address each mental limitation in turn.

**A.    Work-Task Limitations**

Plaintiff first contends the RFC restrictions are not compatible with the work-task limitations assessed by J. Zuess, M.D. (Dr. "Zuess") (AR at Ex. 1A) and Patrice Solomon, Ph.D ("Dr. Solomon") (AR at Ex. 7A). (Doc. 12 at 4–6).

**1.    Dr. Zuess and Dr. Solomon's Opinions**

Dr. Zuess and Dr. Solomon assessed Plaintiff's sustained concentration and persistence limitations.[5] (AR at 95). Dr. Zuess opined Plaintiff was not significantly

---

[5] Dr. Zuess and Dr. Solomon also gave their opinions on Plaintiff's ability for social interactions. (AR at 95–96, 166). The Court will not address these findings as Plaintiff does not challenge them in her Opening Brief. (Doc. 12 at 5–6); *see Lewis*, 236 F.3d at 517 n.13 (the district court reviews only those issues raised).

- 6 -

limited in the following:

- "carry[ing] out very short and simple instructions";
- "carry[ing] out detailed instructions";
- perform[ing] activities within a schedule, maintain regular attendance, and but punctual with customary tolerances";
- "sustain[ing] an ordinary routine without special supervision";
- "work[ing] in coordination with or in proximity to others without being distracted by them"; and
- "make[ing] simple work-related symptoms."

(*Id*.) Dr. Zuess opined Plaintiff was moderately limited in the following:

- "maintain[ing] attention and concentration for extended periods"; and
- "complete[ing] a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

(*Id*.) Last, Dr. Zuess recommended Plaintiff's concentration and persistence limitations in narrative form: "[Plaintiff] is able to carry out 1-to 2-step instructions, follow simple work-like procedures, maintain attention and concentration doing 1-to 2-step tasks throughout a regular workday and workweek and make simple work-related decisions."   (AR at 95). Dr. Solomon affirmed Dr. Zuess's findings.  (*Id*. at 166).  The ALJ considered these medical opinions at step four and found them persuasive "insofar as they support the non-exertional mental limitations assessed herein, which limits the [Plaintiff] to simple unskilled work."  (*Id*. at 25).

At issue is whether the RFC's restrictions to "simple routine repetitive tasks not performed in a fast paced production environment" and "employment involving only simple work related decisions" are consistent with Dr. Zuess and Dr. Solomon's medical opinions regarding Plaintiff's maximum work-task capacities.  (*Id*. at 18).

### 2. Plaintiff's Position

Plaintiff argues the ALJ procedurally erred by creating RFC mental restrictions that

were not compatible with Dr. Zuess and Dr. Solomon's opinions despite finding them persuasive. (Doc. 12 at 4–7). She contends the ALJ should have either (1) included in the RFC a limit to "1-to 2-step tasks" or (2) otherwise explained her omission. (*Id*. at 6). She further argues the ALJ's omission was harmful because Dr. Zuess and Dr. Solomon's opinions more closely align with GED Reasoning Level 1 to "apply commonsense understanding to carry out simple one-or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." (*Id*. citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)). By contrast, the work found available to Plaintiff at step five required a GED Reasoning Level of 2 to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." DOT § 344.677-014, 1991 WL 672865 (usher); *id*. § 372.667-042, 1991 WL 673102 (school bus monitor).

### 3. The Commissioner's Position

The Commissioner opposes that the RFC does not substantially differ from the totality of Dr. Zuess and Dr. Solomon's opinions, so the ALJ had no duty to explain any differences. (Doc. 13 at 6–8). The Commissioner contends Plaintiff's argument is meritless because it "focus[es] solely on Drs. Zuess' and Solomon's limitation to '1- to 2-step tasks' while disregarding the additional findings regarding 'simple' work." (*Id*. at 8). The Commissioner further maintains there is no reversible error because Dr. Zuess and Dr. Solomon's opinions do not preclude work requiring a GED Reasoning Level of 2. (*Id*. at 8–9). The Court agrees with the Commissioner.

### 4. The RFC is Compatible with the Medical Opinions

The Commissioner is correct that while Dr. Zuess and Dr. Solomon assessed Plaintiff can carry out 1-to 2-step instructions, they also assessed various greater capacities: (1) she can "follow simple work-like procedures;" (2) she can "make simple work-related decisions"; and (3) her abilities to "carry out very short and simple instructions" and "detailed instructions" are "[n]ot significantly limited." (AR at 95, 166). So, the medical

opinions demonstrate Plaintiff is capable of performing tasks beyond the limits of "1-to 2-step tasks." This serves as substantial evidence that the RFC mental restrictions are consistent with the medical opinions to the extent it reflects *the most* Plaintiff can do despite her limitations. *See Reddick*, 157 F.3d at 724 (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c); 20 C.F.R. § 404.1545(a); SSR 96-8p.

Although Plaintiff argues it is ambiguous whether the medical opinions intended to create a scale of capabilities (Doc. 14 at 2), the ALJ is tasked with resolving such ambiguities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. Thus, the ALJ was within her discretion to translate Dr. Zuess and Dr. Solomon's opined restrictions accordingly. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (affirming the ALJ's translation of medical evidence into concrete RFC restrictions that limited the plaintiff to "simple tasks"). And because the RFC mental restrictions are consistent with the medical opinions, they consequently remain consistent with the work found available to Plaintiff at step five that required a GED Reasoning Level of 2. (*Compare* AR at 18 *with* DOT § 344.677-014, 1991 WL 672865 (usher); *id.* § 372.667-042, 1991 WL 673102 (school bus monitor)).

In sum, the RFC is compatible with Dr. Zuess and Dr. Solomon's medical opinions because "1-to 2-step tasks" is a subset of Plaintiff's capabilities to carry out "simple routine repetitive tasks not performed in a fast paced production environment" and "employment involving only simple work related decisions." (AR at 18). A reasonable person might accept Dr. Zuess and Dr. Solomon's opinions as adequate to support the ALJ's RFC restriction. *See Garrison*, 759 F.3d at 1009 (defining the standard for substantial evidence). And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999)). There is no legal error here.

**B.     Social Limitations**

Plaintiff further contends the RFC restrictions do not account for the social

limitations identified in the ALJ's PRT findings and the medical opinion of Jose Abreu, Ph.D. ("Dr. Abreu") (AR at Ex. 13 F).  (Doc. 12 at 6–8).

### 1. The ALJ's PRT Finding and Dr. Abreu's Opinion

The ALJ's relevant PRT findings at step two and three of her analysis are as follows:

> In interacting with others, the claimant has a mild limitation. The claimant indicated spending time with others just sitting and talking or watching a movie. (Exhibit 3E/5) She acknowledged having no problems getting along with family, friends, neighbors, or others. (Exhibit 3E/6)

(AR at 18).  She qualified that her PRT findings are not an RFC assessment, "but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (*Id.*)  She further clarified "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning," and that the RFC reflects the degree of limitation the ALJ found in her PRT findings.  (*Id.*)

The ALJ also considered Dr. Abreu's medical opinion at step four of her analysis. (*Id.* at 24–25).  Dr. Abreu assessed Plaintiff's social limitations as follows:[6]

> A diagnosis of Other Specified Depressive Disorder (affective liability, social isolation linked to worsening health and pain) is appropriate. Affective liability may impair task persistence and socially appropriate behavior at work.
> . . . .
> During the evaluation, the claimant's affect was dysphoric, tearful, in emotional distress, and exacerbated by pain.  Nonetheless, she was cooperative and socially appropriate with me while interviewing and there is no reason to speculate inability to get along with others at work.

(*Id.* at 502–3, 25).  The ALJ found Dr. Abreu's opinions persuasive "insofar as they support the non-exertional mental limitations assessed herein, which limits the [Plaintiff]

---

[6] Dr. Abreu also assessed Plaintiff's limitations regarding her understanding and memory; sustained concentration and persistence; and ability to adapt to changes in the work setting. (AR at 503).  The Court will not address these findings as Plaintiff does not challenge them in her Opening Brief.  (Doc. 12 at 7); *see Lewis*, 236 F.3d at 517 n.13 (the district court reviews only those issues raised by the party challenging the decision).

to simple unskilled work." (*Id*. at 25).

At issue is whether the RFC's restrictions to "simple routine repetitive tasks not performed in a fast paced production environment" and "employment involving only simple work related decisions" are consistent with the social limitations above. (*Id*. at 18).

### 2. Plaintiff's Position

Plaintiff cites to *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012) (unpublished) for the proposition that the ALJ was required to account in the RFC her PRT finding that Plaintiff is mildly impaired in interacting with others. (Doc. 12 at 7–8). She argues the ALJ's finding that Plaintiff can get along with "family and friends" is different from interacting with coworkers, supervisors, and the children a school bus monitor is likely to supervise. (*Id*. at 8). Alternatively, she argues the ALJ was required to explain why she chose to omit social limits from the RFC despite her PRT finding. (Doc. 14 at 3). She further maintains "[t]he ALJ did not offer an analysis of Dr. Abreu's opinion that was sufficient to explain the lack of social limitation, and even a minor social limitation would appear to conflict with work designated as 'P' for dealing with people." (Doc. 12 at 7).

### 3. The Commissioner's Position

The Commissioner contends *Hutton* does not require the ALJ to include limitations in an RFC that reflect mild limitations in the PRT criteria—only that the ALJ must consider Plaintiff's nonsevere impairment when determining the RFC. (Doc. 13 at 12 citing 491 F. App'x at 850). She argues the RFC is consistent with the ALJ's PRT findings because it reflects Plaintiff's ability to interact with a broader range of people than just family and friends. (*Id*. at 12). The Commissioner further maintains the RFC limitations are consistent with Dr. Abreu's opinion because Dr. Abreu did not offer any concrete social limitations. (*Id*. at 10–14). The Court agrees with the Commissioner.

### 4. The RFC is Consistent with the PRT finding and Medical Opinion

Similar to Dr. Zuess and Dr. Solomon's opinions, Plaintiff misrepresents the scope of the ALJ's PRT findings and Dr. Abreu's medical opinion. Neither include any concrete social limitations that are inconsistent with the RFC.

First, in delivering her PRT finding that Plaintiff is mildly limited in social interactions, the ALJ cited to Plaintiff's own report of having no problems getting along with "family, friends, neighbors, or others." (AR at 18 citing *id.* at 346). Although Plaintiff contends the PRT finding failed to consider the differences between interacting with personnel in a work setting (Doc. 14 at 3 citing *Morris v. Berryhill*, 358 F. Supp. 3d 875, 883 (D. Ariz. 2019)) that is not the purpose of the PRT.[7] The ALJ certainly noted this distinction in her decision: the PRT technique is conducted under 20 C.F.R. § 404.1520a for the purposes of steps two and three, which is separate from assessing an RFC under 20 C.F.R. § 404.1545 for the purposes of step four and five. *Supra* Section IV.B(1) citing (AR at 18); *see also* 20 C.F.R. § 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). The ALJ was therefore not obligated to articulate explanations that are required by the RFC assessment when delivering her PRT findings.

The Court also agrees with the Commissioner that *Hutton* is "inapposite" to the present matter (Doc. 13 at 12). The ALJ in *Hutton* found the plaintiff's post-traumatic stress disorder ("PTSD") was nonsevere at step two while noting mild concentration, persistence, or pace limitations in the PRT findings. *Hutton*, 491 F. App'x at 850. At step four, the ALJ avoided considering the plaintiff's post-traumatic stress disorder altogether by discrediting the plaintiff's testimony, his treating physicians' opinions, and the United States Department of Veterans Affairs' disability rating. *Id*. The Ninth Circuit held the ALJ erred because "[r]egardless of its severity, [] the ALJ was still required to *consider* [the plaintiff's] PTSD when he determined [the plaintiff's] RFC." *Id*. (emphasis added). The court further stated that "the ALJ was required to *consider* . . . the 'mild' limitations his PTSD caused with concentration, persistence[.]" *Id*. (emphasis added). Notably, *Hutton* did not expressly require an ALJ to *include* a mild limitation in the RFC.

---

[7] Indeed, Plaintiff's supporting authority is distinguishable because it concerns a challenge to an ALJ's decision to reject a medical opinion at the step four RFC, not an ALJ's PRT analysis at steps two and three. *See Morris*, 358 F. Supp. 3d at 883.

Here, the ALJ found Plaintiff's depressive, bipolar and related disorders to be severe at step two. (AR at 17). But unlike the ALJ in *Hutton*, she did consider Plaintiff's mental disorders as step four (*Id.* at 22–25), including Dr. Abreu's diagnosis of Plaintiff with "other specified depressive disorder." (*Id.* at 24). And Plaintiff has not pointed to any evidence suggesting the ALJ did not consider her own PRT findings. Thus, the problem in *Hutton* is not posed in the present action. In any event, the ALJ's PRT finding that Plaintiff can get along with others is consistent with the RFC.

Last, by citing Dr. Abreu's opinion that "Plaintiff's affective lability may impair . . . socially appropriate behavior at work" (Doc. 12 at 6 citing AR 502), Plaintiff neglected to mention Dr. Abreu's greater finding that "there is no reason to speculate [Plaintiff's] inability to get along with others at work." (AR at 503). Nor has Plaintiff cited any legal authority establishing that "even a minor social limitation would appear to conflict with work designated as 'P' for dealing with people." (Doc. 12 at 7). As pointed out by the Commissioner, Dr. Abreu's statement that Plaintiff's affective lability "*may impair*" is ambiguous and not concrete, as evinced by the qualifier "may." (Doc. 13 at 10; AR at 503) (emphasis added). Indeed, it is the ALJ's obligation to resolve ambiguities in the medical evidence. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1039. The ALJ did so here.

To summarize, there is substantial evidence showing the ALJ properly considered Plaintiff's mental disorders at step four, and Plaintiff has not identified any legal error regarding the ALJ's PRT findings. It was also within the ALJ's discretion to translate Dr. Abreu's ambiguous social interaction findings into the RFC. *See Tommasetti*, 533 F.3d at 1041; *Stubbs-Danielson* 539 F.3d at 1174. A reasonable person could find the RFC is consistent with Dr. Abreu medical opinion, and the Court will not substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954 (*citing Morgan*, 169 F.3d at 599).

/ / /

/ / /

/ / /

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's July 21, 2021, decision is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 28th day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge